UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANGELA KIRSHY,

        Plaintiff,

-v-                                                CASE NO. 2:06-CV-152-FTM-34-DNF

MICHAEL J. ASTRUE[1],
Commissioner of Social Security,

        Defendant.
_____/

## OPINION AND ORDER[2]

This matter is before the Court on the plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration ("the Commissioner") denying her claim for disability, disability insurance benefits, and Supplemental Security Income (SSI)[3]. The Plaintiff timely pursued and exhausted her administrative remedies making this claim ripe for review

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated July 31, 2006. (Doc.# 13).

[3] Because the disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. Patterson v. Bowen, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); McCruter v. Bowen, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

under section 216(I) and 223, respectively of the Social Security Act, as amended and disabled under section 1614(a)(3)(A) of the Act. The Commissioner has filed a transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda. For the reasons set forth below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

I. Social Security Act Eligibility,
the ALJ Decision, and Standard of Review

The plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether the plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ notes in his decision that the plaintiff had previously filed an application for disability insurance benefits on July 21, 1992, alleging disability since February 20, 1990. The plaintiff received a favorable decision and beginning February 20, 1990, was awarded benefits due to chronic cervical strain/sprain and lumbar disc herniation. A continuing disability medical review hearing officer determined that the plaintiff's disability had ceased on March 1, 2000, based on the plaintiff's medical improvement.

The plaintiff's disability insurance was terminated on May 1, 2000. On August 9, 2002, the Court of Appeals denied plaintiff's request for review. [Tr. 15]   The decision of the Administrative Law Judge dated August 27, 2001, stood as the final decision of the Commissioner.

On or about April 11, 2002 (Tr. 47), the plaintiff filed new applications for disability, disability insurance benefits and Supplemental Security Income, asserting a disability onset date of August 28, 2001. The plaintiff's application was denied initially and upon reconsideration (Tr. 15-25).  The plaintiff was represented by counsel and testified at the hearing held on July 27, 2004, along with an impartial vocational expert. Administrative Law Judge (ALJ) Michael S. Maram denied benefits in his decision dated October 28, 2004. (Tr. 15-25).  The plaintiff requested a review of the hearing decision and on February 24, 2006, the Appeals Council denied the request. (Tr. 2 A, B, C).  The plaintiff has exhausted her administrative remedies, and timely filed a complaint with this Court.

At Step 1 the ALJ found the plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 28, 2001. (Tr. 47).  At Step 2 the ALJ found the plaintiff suffered from severe impairments of carpal tunnel syndrome and fibromyalgia (Tr. 17).  20 C.F.R. § 404.1520(c).  At Step 3 the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairments, any of the impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr.

17). At Step 4 the ALJ determined the plaintiff had the residual functional capacity to perform sedentary work with a sit/stand option and mildly reduced grip strength for fine dexterity. (Tr. 23 ). Further, the ALJ found the plaintiff's allegations regarding her limitations not totally credible. (Tr. 24).

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Crawford, 363 F.3d at 1158. Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59.

The Court does not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The magistrate judge, district judge and appellate judges all apply the same legal standards to the review of the Commissioner's decision. Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Commissioner of Social Security, 391 F.3d 1276, 1282 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## II.  Review of Facts and Conclusions of Law

**A.     Background Facts:**

The plaintiff was born on August 13, 1962 and was forty-two years old at the time of the ALJ's decision. (Tr.218). The plaintiff completed tenth grade and received her GED degree. The plaintiff took other courses but never obtained her AA degree.

The plaintiff has previously worked as a retail store manager, office manager, and administrative assistant to a store owner. (Tr. 221).  The Plaintiff indicated that she has severe and constant back pain and pain in her arms, shoulders, neck area, back, feet and calves.  The Plaintiff testified she had been diagnosed with fibromyalgia and carpal tunnel syndrome.  (Tr 223-224).

The record shows the plaintiff was seen by David B. Sudderth, M.D. of NASA Neuroscience Spine Associates on May 10, 2001.  The plaintiff related that she had been in an automobile accident approximately ten years prior.  The plaintiff was treated for several years for her neck and back injuries and was disabled as a result of the accident.  [The plaintiff never had any neck or back surgery ever performed as a result of her injuries).  "[T]he plaintiff comes in complaining of neck pain radiating diffusely into her right arm.  The plaintiff has difficulty using the arm because of pain and numbness.  The patient complains of intense lower back pain with radiation to the buttocks, thigh and calf area.  The plaintiff has some intermittent numbness on the dorsum of the right foot.  The plaintiff is otherwise healthy."  Dr. Sudderth found some tenderness in the mid and lower cervical paraspinal region.  He noted trigger points in the upper trapezius musculature of the neck which did not exacerbate the patient's arm symptoms.  The doctor found no abnormal curvatures of the spine but "[s]ome L5-S1 facet joint tenderness with some spasm on the right.  Straight leg raising was negative.  Range of motion is normal in the shoulders and hips.  Peripheral pulses are full.  There is no edema..  There is no Romberg sign."  [Tr. 82-83].

The plaintiff's motor strength was 5/5 with normal tone. No documented abnormal movements were noted. The sensory examination was normal to pin prick, light touch, vibration and joint position, and her gait and cerebellar testing was normal. Dr. Sudderth requested an MRI of the cervical and lumbar spine and prescribed Vioxx 25 mg. q. day. The plaintiff was advised to discontinue the use of Aleve and return when the studies were completed. [Tr. 83].

On May 15, 2001, two studies were performed on the plaintiff by the MRI Center of Charlotte County, a Lumbar Spine Study Without Contrast and a Cervical Spine Study Without Contrast. On the first study Dr. Robert E. Gerson determined, "[N]ormal soft tissues. Vertebral bodies are in good alignment. Disc spaces are preserved. There is a desiccated disc at L5-S1 with degenerative changes on both sides of the disc space. There is no evidence of fracture. The conus has a normal appearance." (Tr. 84).

On the second study Dr. Gerson determined, "[T]he soft tissues have a normal appearance. Vertebral bodes are in good alignment. The disc spaces are generally preserved. No fracture is noted. C7-T1 level appears intact. Neural foramina are maintained. C5-6-7, mild central disc bulging with very slight effacement of the anterior thecal sac. Nerve roots are maintained. C5-6, there is mild central disc bulging with slight effacement of the anterior thecal sac. The nerve roots are maintained. C3-4 and C4-5 levels are normal." IMPRESSION: 1. Mild central disc bulging C5-6 and C6-7 with normal neural foramina. Otherwise, unremarkable study. [Tr. 84, 85].

The plaintiff was seen by Dr. Sudderth again on May 17, 2001, and complained of "[P]ain in the neck and upper shoulders as well as pain in the low back area." The plaintiff finds any stooping, lifting or bending difficult." The plaintiff's physical examination reveals her "[R]eflexes are symmetric. There is no weakness, atrophy or sensory loss. Trigger points are noted in the upper trapezius musculature. The plaintiff has "[s]ome spasm in the med and lower cervical paraspinal region. The L5-S1 facet joints are quite tender with some spasm on the right." Dr. Sudderth recommended that "[the patient continue with home stretching exercises. We will begin lumbar reconditioning. She will take Vioxx 25 mg. q. a day." [Tr. 81]

The plaintiff was seen by Dr. Sudderth again on June 21, 2001, and complained of "[p]ain and stiffness in the neck and upper shoulders and in the lower back. The plaintiff did not begin lumbar reconditioning at this time." The plaintiff's physical examination revealed she "[h]ad no weakness, atrophy or sensory loss. There is marked L5-S1 facet joint tenderness with spasm on the right." The doctor again advised the plaintiff of the need for lumbar reconditioning. [Tr. 80].

The plaintiff was seen by Dr. Sudderth, again on July 19, 2001, for a follow-up visit. The exam revealed that the plaintiff's reflexes were symmetric. Trigger points were noted in her upper trapezius musculature and some tenderness was found in the mid and lower cervical paraspinal area. Dr. Sudderth found facet joint tenderness at L5-S1. The plaintiff advised the doctor that she did not feel that the reconditioning program was

helping her. The plaintiff still complained of pain in the neck and upper shoulders as well as numbness in both hands and pain in her lower back. Dr. Sudderth recommended the plaintiff be seen by a physiatrist. [4]

On September 13, 2001, the plaintiff was seen by Steven M. Tucci, M.D., Ph.D. of Sports, Rehabilitation and Physical Medicine Specialists. Dr. Tucci indicated in his letter to Dr. Sudderth that the plaintiff has "[c]lassic fibromyalgia syndrome." He also indicated that the plaintiff may have bilateral carpal tunnel syndrome. Dr. Tucci started her on Desyrel 50 mg. to help with the pain and sleep dysfunction. He ordered neuromuscular therapy and electrical acupuncture to help the plaintiff's symptomatology. [Tr. 174].

On October 3, 2002, Jean Summers, L.M.T., the plaintiff's therapist, completed a discharge summary report stating that the plaintiff's objectives had been achieved, that her carpal tunnel pain and spasms had decreased as well as her upper extremity pain. The plaintiff was advised to continue with her routine of using the pool, stretching and walking. [Tr. 19].

On January 2, 2003, John Hand, M.D. of Gulf Coast Orthopedic Center evaluated the plaintiff at the request of Dr. Tucci. The plaintiff was complaining of bilateral hand numbness (right hand greater than left), especially when she was blow-drying her hair, writing or driving a car. Dr. Hand diagnosed bilateral carpal tunnel syndrome and recommended surgical treatment. [Tr. 19].

---

[4]    A physiatrist is a physician who specializes in physical medicine, i.e. a physical therapist. <u>The American Heritage Stedman's Medical Dictionary</u>.

Dr. Tucci continued to treat the plaintiff through July 15, 2004, for continued neck and back pain with radiation to the right lower extremities, difficulty sleeping, numbness in hands and feet and stiffness. Dr. Tucci reported in 2001 that the plaintiff "[h]as classic fibromyalgia syndrome that worsen [sic] with activities." (Tr. 202). In 2003, Dr. Tucci found that the plaintiff had problems with fine dexterity. (Tr. 191). On August 5, 2004, Dr. Tucci completed a physical capacity evaluation and reported that in an 8 hour work day, plaintiff "[c]an stand for 2 hours, walk for 2 hours, sit for 3 hours, and lift less than 10 pounds. (Tr. 212). Dr. Tucci found the plaintiff "[c]an not pull or push with her hands or use her feet for repetitive movements, can occasionally bend, kneel, squat and climb stairs, but never crawl or climb ladders." (Tr. 213). Dr. Tucci found the plaintiff had marked limitations in her ability to be able to complete a normal work day/work week without interruptions from her medical symptoms and in her inability to tolerate stress. (Tr. 213).

On August 10, 2004, Dr. Tucci reported that the plaintiff needs assistance with her daily duties, has a caretaker to help her with her children, and is unable to maintain laundry and manual household duties. Dr. Tucci reported in the medical narrative report that the plaintiff's symptoms of fibromyalgia have worsened with time and that plaintiff remains with minimal capacities and performs at a part time sedentary level. Dr. Tucci found the plaintiff's "[c]hronic pain syndrome is mentally distracting and renders her unable to concentrate on even simple tasks." Further, "[t]he plaintiff needs to change positions every 30 minutes and is restricted to a ten pound lifting maximum." In conclusion, Dr. Tucci reported: " [M]s. Kirshy will continue to require periodic medical

visits with pulses of therapy for flare up situations." (Tr. 211).

**B.    Specific Issues:**

**(1)    The ALJ Failed to Place Proper Weight on the Opinion of Plaintiff's Treating Physician:**

The ALJ considered the plaintiff's claim in accordance with the sequential evaluation process used to determine whether a claimant is disabled or not disabled. 20 C.F.R. 404.1520. The ALJ found that the plaintiff had severe impairments, including carpal tunnel syndrome and fibromyalgia, but did not find that her impairments met or equaled a listed impairment. (Tr. 17, 24 findings 3, 4). 20 C.F.R. 404.1520 (a)(4)(iii) (c),(d). The ALJ found the Plaintiff had the residual functional capacity (RFC) to perform sedentary work with a sit/stand option and mildly reduced grip strength for fine dexterity. (Tr. 23, 24 finding 6). 20 C.F.R. 404.1520(e), 404(1567(a) (defining sedentary work). Given the demands of the plaintiff's past relevant work as an office manager or administrative assistant, and the testimony of the vocational expert, the ALJ found the plaintiff not disabled. 20 C.F.R. 404.1520(a)(4)(iv)(f).

Further, the ALJ discounted Dr. Tucci's opinion regarding the plaintiff's ability to work. (Tr. 21-22, 212-13). The ALJ determined that Dr. Tucci's records do not include medical signs or laboratory findings to support his opinion regarding the plaintiff's ability to work. (Tr. 152-78, 187-210). The ALJ found that in September 2002, Dr. Tucci found the plaintiff to have no range of motion loss, she maintained normal grip strength and fine dexterity, had normal gait and station and did not need an assistive device. (Tr. 162).

In January 2003, Dr. Tucci's opinion changed and he noted that the plaintiff had trigger points and some sensory loss, weakness in her grip strength, and mild problems with fine dexterity due to carpal tunnel syndrome, and he noted she had no loss of motion, no deformities, normal reflexes and sensations except in her hands. (Tr. 212-213).

Substantial evidence supports the ALJ's decision to discount Dr. Tucci's opinion regarding the plaintiff's ability to work. [Tr. 21-22, 212-13). Although Dr. Tucci noted plaintiff's subjective complaints and diagnosed her with fibromyalgia and carpal tunnel syndrome, his records do not include medical signs or laboratory findings to support his opinion regarding the plaintiff's ability to work. [Tr. 152-78, 187-210]. The Eleventh Circuit has stated, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d at 1213 (citing *McCruter v. Bowen* 791 F.2d 1544, 1547 (11th Cir. 1986); *see also Higgs v. Bowen* 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition").

Plaintiff's treatment history undermines Dr. Tucci's opinion. The record shows that the plaintiff visited Dr. Tucci only on a limited basis after January of 2003. [Tr. 21-22]. Dr. Tucci recommended conservative treatment such as water aerobics for her fibromyalgia. [Tr. 153, 167-74, 187-90, 193]. The record also shows that therapy greatly reduced plaintiff's symptoms because there were extended time periods when the plaintiff did not receive any treatment(s). [Tr. 153, 167-74, 187-90]. Additionally, the plaintiff

was not on any kind of pain or other medications when she first went to Dr. Tucci [six months after her alleged onset date] [Tr. 174]. Once the plaintiff was seen by Dr. Tucci he prescribed Desyrel and later on in her treatment, Vioxx.[5] [Tr. 153, 168-69, 171, 172]. The record shows that after January of 2003, the plaintiff used only over-the-counter medications on an "as needed basis". The plaintiff's minimal use of medications provides information to show that her condition was not as limiting as the plaintiff claimed or as opined by Dr. Tucci. 20 C.F.R. §§ 404.1527(d)(4), 404.1529(c)(3)(iv); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984), *see also Johnson v. Chater*, 108 F.3d 942, 947 (8thCir. 1997) (noting that a claimant's failure to take prescription pain medication undermined the claimant's subjective complaints of disabling pain); *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990) (noting that the use of only mild pain medication undercut the claimant's complaints of disabling symptoms). Further, the medical records from David Sudderth, M.D and John Hand, M.D., as noted previously, did not document findings that would support Dr. Tucci's opinion. [Tr. 150-51].

**(2)    Vocational Expert Testimony**

At the hearing, vocational expert Joyce Ryan testified. Ms. Ryan is a vocational rehabilitation case manager and a medical case manager. She provides services for

---

5    The record shows that while under the care of Dr. Sudderth, the Plaintiff was prescribed Vioxx. The length of time this medication was taken by the Plaintiff is not clear in the record.

people with disabilities in order to assist them with their medical management and to assist them in getting back to appropriate employment. Ms. Ryan has held these positions in the State of Florida for over twenty years. [Tr. 240].

Ms. Ryan was asked by the administrative law judge to review all the documents provided in the plaintiff's medical history. The plaintiff's medical history reveals that she was 42 years old at the time of the hearing and at the alleged onset date of her disability she was approximately 39 years of age. The record shows that the plaintiff completed the 10th grade and obtained a GED. Ms. Ryan noted the plaintiff's past work as ranging from sedentary to light and unskilled. [Tr. 240]. When asked by the ALJ that "[I]f I accredited the Claimant's testimony in its entirety, including the need for extended rest periods, would she be able to engage in competitive employment in any level?" To which the vocational expert replied, "[N]o sir."

However, when the ALJ used the scenario that the plaintiff had "[a] maximum residual functional capacity for a restrictive range of sedentary to light work activity restricted by a reduced grip strength, mildly reduced grip strength from five to five to four to five, particularly on the right and mild the – mildly reduced difficulty for fine dexterity. Further crediting the Claimant's testimony, she would need an opportunity to alternate sitting and standing but not at will. I believe the testimony was at 10 or 15 minutes – an opportunity to adjust. With that residual functional capacity, could the Claimant return to any or all of her past jobs?"

**A.** Ms. Ryan: "[I] believe the – definitely the office manager and administrative assistant with those mild restrictions, and with the sit/stand option with those jobs. The

retail store manager is also viable, Your Honor, but I think there's less opportunity for sitting in that job, as there is more opportunity for standing in the other two." [Tr. 241].

Substantial evidence supports the ALJ's decision to discount Dr. Tucci's opinion. The plaintiff failed to meet her burden of providing evidence to support her allegations of disabling pain and other symptoms. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), (c), 404.1529(a). The Plaintiff failed to prove that her condition caused additional limitations, and failed to meet her burden of proving that she could not perform her past relevant work as an office manager or administrative assistant. [Tr. 23-25, Tr. 241]. 20 C.F.R. § 404.1520(a)(4)(iv), (f). Therefore, the plaintiff was not disabled within the meaning of the Social Security Act.

### III. CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 19th day of April, 2007.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:
All Parties of Record
All Counsel of Record